[865 NYS2d 102]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent, v JOHN ROBERT LANGAN, as Administrator of the Estate of NEIL CONRAD SPICEHANDLER, Deceased, Appellant.

Second Department, September 16, 2008

APPEARANCES OF COUNSEL

*Saiber Schlesinger Satz & Goldstein, LLC*, New York City (*Jennine DiSomma* of counsel), for appellant.

*Rivkin Radler, LLP*, Uniondale (*Evan H. Krinick* and *Cheryl F. Korman* of counsel), for respondent.

### OPINION OF THE COURT

FISHER, J.

On February 12, 2002, Neil Conrad Spicehandler was struck and fatally injured by a motor vehicle driven by Ronald Popadich, who was later arrested, inter alia, in connection with Spicehandler's death. John Robert Langan, as administrator of Spicehandler's estate, sought to recover uninsured motorist benefits and death benefits pursuant to an automobile liability policy issued to Langan by State Farm Mutual Automobile Insurance Company (hereinafter State Farm). Langan claimed that the policy covered Spicehandler as an insured. After an investigation, State Farm disclaimed coverage on a number of grounds. Insofar as relevant to this appeal, State Farm asserted that it was not obligated to afford coverage because Spicehandler's injuries were caused by Popadich's intentional criminal

conduct and thus were not the result of an "accident" as required by the State Farm policy.

State Farm then commenced this action, inter alia, for a judgment declaring that it was not obligated to provide coverage, and it moved, among other things, for summary judgment on the ground that Spicehandler was injured as a result of Popadich's intentional conduct, and not as a result of a covered "accident." By order dated January 26, 2004, the Supreme Court, inter alia, denied State Farm's motion, without prejudice to renew following the resolution of the criminal charges pending against Popadich as a result of the incident (2004 NY Slip Op 30243[U]). On appeal, this Court, inter alia, affirmed that portion of the Supreme Court's order (*see State Farm Mut. Auto. Ins. Co. v Langan*, 18 AD3d 860, 862 [2005]).

On September 28, 2005, Popadich pleaded guilty to the charge of murder in the second degree, admitting that, on February 12, 2002, he intentionally caused Spicehandler's death by striking him with an automobile. Thereafter, State Farm moved for leave to renew its prior motion, inter alia, for summary judgment, tendering, among other things, the transcript of Popadich's plea proceedings. Langan cross-moved, inter alia, for summary judgment. Supreme Court granted State Farm's motion for leave to renew, and upon renewal, granted that branch of State Farm's motion which was for summary judgment and denied that branch of Langan's cross motion which was for summary judgment (2006 NY Slip Op 30400[U]). We modify.

Supreme Court correctly determined that State Farm was not obligated to provide coverage under the policy's uninsured motorist endorsement. The purpose of an uninsured motorist endorsement is to help effectuate New York's compulsory automobile liability insurance scheme "by providing coverage to insured persons who suffer automobile accident injuries at the hands of financially irresponsible motorists" (*Matter of Country-Wide Ins. Co. v Wagoner*, 45 NY2d 581, 586 [1978]). To that end, the endorsement is designed to afford an injured person "the same protection as he [or she] would have had if he [or she] had been injured in an accident caused by an identifiable automobile covered by a standard automobile liability insurance policy in effect at the time of, and applicable to, the accident" (*McCarthy v Motor Veh. Acc. Indem. Corp.*, 16 AD2d 35, 38 [1962], *affd* 12 NY2d 922 [1963]; *see Matter of Nagle [Motor Veh. Acc. Indem. Corp.]*, 22 NY2d 165, 170 [1968] [noting that "it has been recognized that the purpose of this statute was to

provide compensation through the (MVAIC) to the extent that claims would be recognized and claimants compensated as if the owner or driver of the vehicle causing the injury were insured"]; *accord Matter of Knickerbocker Ins. Co. [Faison],* 22 NY2d 554, 558 [1968], *cert denied* 393 US 1055 [1969]). Thus, in New York, the mandatory coverage afforded under an uninsured motorist endorsement is meant to be coextensive with, and therefore no greater than, the standard coverage that would ordinarily be available to the uninsured motorist had he or she been insured (*cf. McCarthy v Motor Veh. Acc. Indem. Corp.,* 16 AD2d at 42). Plainly, no standard automobile liability policy would have provided coverage to Popadich for the injuries he intentionally inflicted on Spicehandler (*see Westchester Med. Ctr. v Travelers Prop. Cas. Ins. Co.,* 309 AD2d 927, 928 [2003]; *Allstate Ins. Co. v Bostic,* 228 AD2d 628, 628-629 [1996]). It follows, then, that, because no coverage would have been provided under a standard automobile liability policy issued to Popadich, State Farm is not obligated to provide benefits under the uninsured motorist endorsement of its policy with Langan (*see McCarthy v Motor Veh. Acc. Indem. Corp.,* 16 AD2d at 42). Accordingly, we conclude that State Farm established its prima facie entitlement to judgment as a matter of law with respect to Langan's claim for uninsured motorist benefits by establishing that Spicehandler's injury and subsequent death were caused by Popadich's intentional criminal acts (*see Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]). In opposition, Langan failed to raise a triable issue of fact.

That does not entirely resolve the issue of coverage, however, as Langan also claims to be entitled to recover benefits under the policy's mandatory personal injury protection endorsement and its death, dismemberment, and loss of sight provisions. We conclude on the record presented that he is so entitled.

As explained previously, for policy reasons, New York law does not extend coverage under a mandatory uninsured motorist endorsement to injuries caused intentionally by a tortfeasor. In other contexts, however, the issue whether an event may be deemed "accidental" for insurance purposes is " 'usually determined by looking at the casualty from the point of view of the *insured* to see whether or not from his [or her] point of view the event was unexpected, unusual and unforeseen' " (*Nallan v Union Labor Life Ins. Co.,* 42 NY2d 884, 885 [1977], quoting 30 NY Jur, Insurance § 1099, at 484 [emphasis added]; *see Agoado Realty Corp. v United Intl. Ins. Co.,* 95 NY2d 141, 145 [2000]).

"In the absence of an express provision in the policy to the contrary, where the insured is intentionally injured or killed by another, and the injury or death is not the result of misconduct, provocation, or an assault by the insured, but is unforeseen from the insured's point of view, and occurs without his or her agency, the injury or death is an accident or accidental, or by accidental means, within the meaning of accident insurance policies, and the insurer is liable therefor" (10 Couch on Insurance 3d § 140:41; *see* New York Insurance Department Regulations [11 NYCRR] § 60-1.1 [f] [requiring every "owner's policy of liability insurance" to include "(a) provision that assault and battery shall be deemed an accident unless committed by or at the direction of the insured"]).

Consequently, in contexts other than a claim made under an uninsured motorist endorsement, coverage is unaffected by whether the tortfeasor acted intentionally in causing the injury, provided only that, from the viewpoint of the insured, the event was "unexpected, unusual and unforeseen" (*Nallan v Union Labor Life Ins. Co.*, 42 NY2d 884, 885 [1977]) and not brought about by the insured's own "misconduct, provocation, or an assault."

In this case, from Spicehandler's point of view, the incident that caused his injuries and death was certainly "unexpected, unusual and unforeseen," and was not the result of any "misconduct, provocation, or an assault" on his part. Consequently, the question of whether or not Popadich acted with criminal intent, although critical to the issue of coverage under the uninsured motorist endorsement, was entirely irrelevant to State Farm's obligation here to provide coverage under the subject policy's mandatory personal injury protection endorsement, and its death, dismemberment, and loss of sight provisions, neither of which contains a specific exclusion for injury or death caused by an intentional act. Viewed in this context, our observation on the prior appeal that "if Spicehandler's injuries and death were the result of an intentional assault or an intentional homicide . . . the incident is not covered under the applicable policy" (*State Farm Mut. Auto. Ins. Co. v Langan*, 18 AD3d at 862), can reasonably be read as directed only at the policy's uninsured motorist endorsement. Moreover, that our holding affords different interpretations of the term "accident" within the subject policy is the inevitable consequence of the

fact that current New York law makes uninsured motorist coverage in this state narrower than would be expected under general insurance principles.

In sum, State Farm is not obligated to provide coverage under the subject policy's uninsured motorist endorsement for the injuries sustained by Spicehandler as a result of a hit-and-run incident on February 12, 2002, but is obligated to provide benefits for those injuries under the subject policy's mandatory personal injury protection endorsement and its death, dismemberment, and loss of sight provisions.

Langan's remaining contentions are either not properly before us or without merit.

MASTRO, J.P., concurs in part and dissents in part and votes to affirm the order insofar as appealed from, with the following memorandum, in which CARNI, J., concurs.

On February 12, 2002, Neil Conrad Spicehandler was struck and injured by a motor vehicle operated by Ronald Popadich. Spicehandler subsequently died as a result of his injuries. The administrator of Spicehandler's estate, the defendant John Robert Langan, sought to recover, inter alia, uninsured motorist benefits pursuant to an automobile liability policy issued by the plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), to Langan, under which Spicehandler was an insured. After an investigation, State Farm disclaimed coverage under its policy, inter alia, on the ground that Spicehandler's injuries were the result of intentional conduct and were not the result of an accident as required by the policy.

State Farm then commenced the instant action, inter alia, for a judgment declaring that it was not obligated to provide the coverage sought by the defendant, and moved for summary judgment on the ground that Spicehandler was injured as a result of Popadich's intentional conduct. In an order dated January 26, 2004, Supreme Court denied State Farm's motion, without prejudice to renewal following a disposition of the criminal proceedings pending against Popadich (2004 NY Slip Op 30243[U]). On appeal from that order, this Court, inter alia, affirmed Supreme Court's denial of that branch of State Farm's motion which sought a declaratory judgment (*see State Farm Mut. Auto. Ins. Co. v Langan*, 18 AD3d 860, 862 [2005]). In so doing, we expressly determined that "[c]ontrary to [Langan's] contention, if Spicehandler's injuries *and death* were the result of an intentional assault or an intentional homicide, then they were

not the result of an accident, and the incident is not covered *under the applicable policy*" (*id.* [emphasis added]).

On September 28, 2005, Popadich pleaded guilty to the charge of murder in the second degree, admitting that on February 12, 2002, he intended to cause Spicehandler's death by striking him with an automobile. Thereafter, State Farm moved for leave to renew its prior motion, inter alia, for summary judgment and the defendant cross-moved, among other things, for summary judgment. In support of its motion, State Farm relied upon the transcript of Popadich's plea proceedings. Upon renewal, Supreme Court granted that branch of State Farm's motion which was for summary judgment and denied that branch of the defendant's cross motion which was for summary judgment (2006 NY Slip Op 30400[U]). I would affirm.

State Farm met its prima facie burden of establishing that it was not liable to the defendant under the terms of its automobile liability policy (*see generally GTF Mktg. v Colonial Aluminum Sales*, 66 NY2d 965, 967 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Popadich's plea of guilty, and the statements he made during the course of his plea proceedings, established that Spicehandler's injuries were the result of intentional conduct and were not the result of an accident, thus precluding recovery under the policy and rendering Popadich uninsured (*see Matter of Allstate Ins. Co. v Massre*, 14 AD3d 610, 611 [2005]; *McCarthy v Motor Veh. Acc. Indem. Corp.*, 16 AD2d 35 [1962], *affd* 12 NY2d 922 [1963]; *Matter of Progressive Northwestern Ins. Co. v Van Dina*, 282 AD2d 680 [2001]).

Based upon the 1963 decision in *McCarthy v Motor Veh. Acc. Indem. Corp.* (16 AD2d 35 [1962], *affd* 12 NY2d 922 [1963]), as well as our own numerous precedents interpreting it, I agree that we are required to uphold the denial of uninsured motorist benefits for injuries resulting from Popadich's intentional conduct. However, it is noteworthy that in the years since *McCarthy* was decided, the overwhelming national trend has been to permit such coverage under facts similar to those at bar, with a substantial majority of jurisdictions now doing so (*see e.g. American Family Mut. Ins. Co. v Petersen*, 679 NW2d 571 [Iowa 2004]; *Shaw v City of Jersey City*, 174 NJ 567, 811 A2d 404 [2002]; *Wendell v State Farm Mut. Auto. Ins. Co.*, 293 Mont 140, 974 P2d 623 [1999]; *Race v Nationwide Mut. Fire Ins. Co.*, 542 So 2d 347 [Fla 1989]; *Country Cos. v Bourbon*, 122 Ill App 3d 1061, 462 NE2d 526 [1984]; *Kish v Central Natl. Ins. Group of*

*Omaha,* 67 Ohio St 2d 41, 424 NE2d 288 [1981]). The courts in the many jurisdictions which now extend uninsured motorist benefits to innocent policyholders who are injured by the intentional acts of tortfeasors have achieved this result largely by interpreting the term "accident" from the perspective of the injured party rather than the tortfeasor. They have based their approach on the strong public policy considerations favoring an avenue of redress for injured parties, as well as the reasonable expectations of those parties when they enter into private insurance contracts and pay premiums for first-party benefits to compensate them for injuries suffered at the hands of motorists who have no available liability insurance coverage, either because they never purchased such coverage or because their liability carriers have validly disclaimed coverage under the terms of their policies.

I recognize that in *Michaels v City of Buffalo* (85 NY2d 754 [1995]), the Court of Appeals elected to interpret the term "accident" from the perspective of the tortfeasor-insured, rather than from the viewpoint of the injured party, in the distinct context of automobile liability coverage. However, in the present case involving, inter alia, a claim for uninsured motorist benefits, the *injured party* was in fact the "insured," since he purchased the uninsured motorist coverage as part of his own liability policy. Moreover, section 60-1.1 (f) of New York's Insurance Department Regulations (*see* 11 NYCRR 60-1.1 [f]), which is applicable to every owner's policy of liability insurance issued in this state (*see generally Dingle v Prudential Prop. & Cas. Ins. Co.,* 85 NY2d 657, 660 [1995]; *Trizzano v Allstate Ins. Co.,* 7 AD3d 783, 785 [2004]), expressly requires the inclusion of "[a] provision that assault and battery shall be deemed an accident unless committed by or at the direction of *the insured*" (emphasis added). Thus, viewing the party claiming uninsured motorist benefits as the "insured," it is clear that the intentional acts committed by Popadich were not "by or at the direction of the insured," and the incident therefore should be a covered "accident" with respect to the injured policyholder.

Given the foregoing discussion, the persuasive logic and strong public policy considerations underlying those decisions in other jurisdictions which have allowed the recovery of uninsured motorist benefits in cases such as this, and the overwhelming modern national trend favoring such recovery, I would respectfully suggest that the time may have come for a

reexamination of the governing principles in this area by our state's highest court.

I decline to join in the determination of my colleagues in the majority that the defendant is entitled to recover death benefits pursuant to the mandatory personal injury protection endorsement and the death, dismemberment, and loss of sight provisions of the subject policy. That determination is inconsistent with our previous order in this very case, in which we unequivocally and unambiguously held that no coverage was available under *the policy* for Spicehandler's death if it resulted from intentional conduct. Significantly, our previous decision and order was not merely limited to the uninsured motorist endorsement of the policy, but was applicable to the *entire* policy. Accordingly, recovery under any section of the policy is precluded by the express language of our previous order, which is binding upon us and constitutes the law of the case (*see generally J-Mar Serv. Ctr., Inc. v Mahoney, Connor & Hussey*, 45 AD3d 809 [2007]; *Suffolk County Water Auth. v H.T. Schneider, Inc.*, 288 AD2d 297 [2001]). In any event, even if we were free to disregard the clear terms of our previous order in this case, I would decline to join in the majority's construction of the policy in such a manner that the phrase "caused by an accident" would have radically different interpretations depending upon whether it appears in the uninsured motorist endorsement or in the death benefit provisions of the subject policy.

RITTER and MCCARTHY, JJ., concur with FISHER, J.; MASTRO, J.P., and CARNI, J., concur in part and dissent in part in a separate opinion by MASTRO, J.P.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof, upon renewal, granting that branch of the motion which was for summary judgment declaring that the plaintiff is not obligated to provide coverage pursuant to the mandatory personal injury protection endorsement and death, dismemberment, and loss of sight provisions of its insurance contract for the injuries sustained by Neil Conrad Spicehandler as a result of a hit-and-run incident on February 12, 2002, and substituting therefor a provision, upon renewal, denying that branch of the motion, and (2) by deleting the provision thereof, upon renewal, denying that branch of the cross motion which was for summary judgment declaring that the plaintiff is obligated to provide coverage pursuant to the mandatory personal injury protection endorsement and

death, dismemberment, and loss of sight provisions of its insurance contract for the injuries sustained by Neil Conrad Spicehandler as a result of a hit-and-run incident on February 12, 2002, and substituting therefor a provision, upon renewal, granting that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the appellant.